UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                           CASE No. 8:11-CR-89-T-23TGW

WILLIAM O. JOEL and
MAURICE VERNON

    Defendants.

_____

## REPORT AND RECOMMENDATION

The United States filed Motions for Forfeiture Money Judgments in the amount of $1,848,000 against defendants William O. Joel and Maurice Vernon (Docs. 187, 188). After the defendants opposed the amount of the forfeiture (Docs. 195, 200), the United States agreed to reduce the request by $230,000, to $1,618,000 (Doc. 219).

The United States has shown that it is entitled to forfeiture money judgments in the amount of $1,618,000, and the defendants have not identified any legal basis for a further reduction. I therefore recommend the entry of forfeiture money judgments against each defendant in the amount of $1,618,000.

I.

Defendants William O. Joel and Maurice Vernon were charged in a thirteen-count indictment alleging conspiracy to commit wire and mail fraud, substantive counts of mail and wire fraud, and making false statements on a loan application, in violation of 18 U.S.C. 1014, 1341, 1343, and 1349 (Doc. 1). More specifically, it was alleged that Joel, Vernon, and co-conspirators Elton Lassiter and Jill Taylor engaged in a scheme to induce lenders to fund loans for the purchase of properties through false pretenses and fraudulent representations (Doc. 1, pp. 2-3). [1]

The indictment contained forfeiture allegations that placed the defendants on notice that the United States would seek a forfeiture money judgment against them, pursuant to 18 U.S.C. 982(a)(2), in an amount not less than $800,000 (id., pp. 11-12). Subsequently, a Forfeiture Bill of Particulars specified that the United States would seek a forfeiture money judgment of $1,846,441 (see Doc. 125).

In January, 2012, a jury convicted Vernon and Joel on all

_____

1. Lassiter, who was also charged in this indictment, pled guilty to counts one, twelve and thirteen of the indictment (Docs. 1, 60, 64). Jill Taylor was charged in a separate case (8:09-CR-522-T-24EAJ), and she pled guilty to a one-count information (Docs. 1, 13, 16).

thirteen counts of the indictment (Doc. 171, 172). Evidence was presented at trial that Joel and Vernon ("the defendants"), working for Investor's Outlet, Inc., assisted co-conspirator Taylor in purchasing ten residential properties in Tampa over a ten-week period in 2006 (see Doc. 188, pp. 3-5). There was evidence that the loan applications were replete with false information concerning, among other things, Taylor's income and assets (id., p. 4). Based on this false information, loans were obtained from ten different lenders totaling $1,848.000.00 (id., p. 5).

Thereafter, the United States filed against each defendant a Motion for Forfeiture Money Judgment in the amount of $1,848,000.00, pursuant to 18 U.S.C. 982(a)(2) (Docs. 187, 188). The defendants oppose the amount of the forfeiture money judgments (Docs. 195, 200). Specifically, they argue that it would violate the prohibition against *ex post facto* laws to include in the judgment funds obtained from eight of the mortgage lenders because §982(a)(2)(A) authorizes forfeiture of the proceeds of crimes that "affect financial institutions," and those eight lenders were not "financial institutions," as that term was defined when the crimes took place in 2006 (id.). Additionally, Vernon argues that

§982(a)(2)(A) does not authorize forfeiture of the gross amount of the fraudulently obtained loans, and that any forfeiture money judgment against him would violate the Eighth Amendment's prohibition against excessive fines (Doc. 195, pp. 2-3).

In a court-ordered reply, the United States agreed that it would violate the *ex post facto* clause to order, pursuant to §982(a)(2), forfeiture of funds obtained from the eight mortgage lending companies that did not fall within the definition of "financial institution" in 2006 (Doc. 202, p. 4). However, the United States then asserted, for the first time, that forfeiture of those funds is authorized under 28 U.S.C. 2461(c) and 18 U.S.C. 981(a)(1)(C) (id., pp. 5-6). Those statutes, when read together, permit criminal forfeiture of the proceeds of general mail and wire fraud. Further, the Government contends that Vernon's forfeiture of the gross proceeds of the conspiracy is appropriate because he is jointly and severally liable for the conspiracy's fraudulent conduct (id., p. 7). The United States also controverts Vernon's contention that the requested forfeiture money judgment is an excessive fine, stating that a fine equal to the proceeds of the defendants' crimes is not excessive (id., pp. 3, 12).

The matter was referred to me for a report and recommendation (Doc. 207). Thereafter, oral argument was held on the motions (see Doc. 215). At the hearing, the defendants argued that the United States may not change the statutory basis for forfeiture at this late stage of the proceedings. Alternatively, they contended that, pursuant to 18 U.S.C. 981(a)(2)(C), they are entitled to a deduction from the forfeiture for loans that were repaid without any financial loss to the victim. In this connection, defense counsel stated that at least one of the fraudulently obtained properties was resold for a profit and, therefore, the proceeds of that fraudulent loan should not be included in the forfeiture money judgment. Since the United States first raised §2461 and §981 in its reply memorandum, neither party had an adequate opportunity to research the legal and factual bases for this contention. Therefore, the parties were allowed to file supplemental memoranda on this issue (Doc. 216).

In the defendants' supplemental memorandum, they assert that they are entitled to a judgment reduction of $230,000, because the loan for the purchase of the property at 606 E. Lambright Street in Tampa was repaid without any financial loss (Doc. 217, p. 3). The defendants argue further

that the amount forfeitable under §981 for the other properties has not yet been ascertained (id., pp. 3-7). In this connection, the defendants argue that the original lenders sold the loans to successor lenders for unknown sums, and that evidence must be produced concerning the prices paid by the successor lenders to determine financial loss (id., p. 6). The United States agreed in its Supplemental Response to reduce the amount of the requested judgments by $230,000 to account for the full repayment of the Lambright Street property (Doc. 219, pp. 1, 5). However, it opposes any further reduction, arguing that the other properties were ultimately sold at a loss, and that the money forfeiture judgments should be the sum of the gross amounts of those loans (id., pp. 4-12).

II.

Rule 32.2(b)(1)(A), F.R. Cr. P., provides:

> As soon as practical after a verdict or finding of guilty ... on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute .... If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

That determination may be "based on evidence already in the record." Rule 32.2(b)(1)(B), F.R.Cr.P. Additionally, in order to enter a judgment of forfeiture following a finding of guilt, the United States must first have notified the defendant in the indictment of its intent to seek forfeiture. Rule 32.2(a), F.R.Cr.P.

The United States provided notice to the defendants in the indictment that it would seek forfeiture of illegally obtained property (Doc. 1). The evidentiary basis for the requested forfeiture money judgments is the trial evidence and the jury verdicts convicting each defendant on all thirteen counts of the indictment (see Docs. 187, 188, pp. 3-5).

A.  18 U.S.C. 982(a)(2)

Section 982(a)(2) of Title 18 was identified in the indictment and the Motions for Forfeiture Money Judgment as the statutory basis for forfeiture (Doc. 1, p. 12; Docs. 187, 188, pp. 1, 2). As pertinent here, §982(a)(2)(A) provides that the court, in imposing sentence on a person convicted of including false statements in a loan application which affects a financial institution, "shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained

directly or indirectly, as the result of such violation."

The defendants were convicted of making fraudulent representations in loan applications to First Franklin, a Division of National City Bank of Indiana, and Fremont Investment and Loan, both of which were financial institutions because their deposits were insured by the Federal Deposit Insurance Corporation (FDIC)(Doc. 1, pp. 10-11; Docs. 171, 172). It was found that that those false statements influenced the banks to loan $164,000 for the purchase of a property at 3120 Woodrow Avenue in Tampa, and $180,000 for the purchase of a property located at 907 Columbus Drive in Tampa (see id.). Therefore, based on these two loans, the United States seeks a money forfeiture judgment pursuant to §982(a)(2) for $344,000, which is the sum of these loans (Doc. 202, p.4, n.3; p. 6).

Joel does not oppose this request (see Doc. 200, p. 5). Vernon, however, argues that the amount of the forfeiture "should be limited to the amount that [he] personally obtained" (Doc. 195, pp. 11-12). He argues, vaguely, that §982(a)(2)(A) "does not authorize forfeiture of the gross amount of the loan" and that he should only be held liable for the $20,000 he personally received from these two loans (id., pp. 2, 11-12).

Vernon's argument is unpersuasive. First, this court has determined that proceeds under §982(a)(2)(A) "means gross receipts without reduction for costs and expenses rather than 'net profit' or a similar concept." United States v. Jason Anthony Martinez, 8:09-CR-507-23AEP (Doc. 33). Therefore, contrary to Vernon's argument (Doc. 195, p. 11), a defendant convicted of a financial institution offense is liable for forfeiture of the entire amount of the loan.

Further, Vernon's contention that he is not liable in forfeiture for the entire amount of the loan because he only received $20,000 of the proceeds ignores the doctrine of joint and several liability. As the United States emphasizes (Doc. 202, pp. 7-8), the Eleventh Circuit (as well as several other appellate courts) have held that joint and several liability applies in the forfeiture context. Thus, conspirators are jointly and severally liable in forfeiture for the proceeds of the conspiracy. United States v. Caporale, 806 F.2d 1487, 1506-08 (11th Cir. 1986), cert. denied, 482 U.S. 917 (1987); United States v. Browne, 505 F.3d 1229, 1278-80 (11th Cir. 2007), cert. denied, 554 U.S. 918 (2008); U.S. v. Spano, 421 F.3d 599, 603 (7th Cir. 2005)("the proceeds of a conspiracy are a debt owed by each of

the conspirators …. It would be absurd to treat them more leniently than the law treats a lawful partnership, all of whose members are severally as well as jointly liable for the partnership's debts."); U.S. v. Newman, 659 F.3d 1235, 1244 (9th Cir. 2011), cert. denied, __ U.S. __, 132 S. Ct. 1817 (2012)(the proceeds of the defendant's crime equal the total amount of the loans obtained by the conspiracy as a whole and "[i]t does not matter that [the defendant] personally profited very little").

        As the Eleventh Circuit stated, "[t]he imposition of joint and several liability on a forfeiture is even less theoretically problematic than vicarious liability for a substantive conviction might be because it goes only to the penalty imposed rather than to the individual's criminal liability." United States v. Caporale, supra, 806 F.2d at 1508. The court also noted that requiring the United States to allocate the specific proceeds received by each defendant would impair effectiveness of the forfeiture, as it would allow defendants to mask the allocation of the proceeds to avoid forfeiting them altogether. Id.

        In sum, Vernon, as a convicted co-conspirator, is liable in forfeiture for the full amount of the illegal proceeds received by the

conspiracy. Therefore, I recommend that each defendant be ordered to forfeit $344,000, pursuant to 18 U.S.C. 982(a)(2)(A).

### B.  28 U.S.C. 2461(c) and 18 U.S.C. 981(a)(1)(C)

As indicated, the defendants object to a forfeiture money judgment pursuant to §982(a)(2)(A) regarding loans from the remaining eight defrauded mortgage lenders because they were not financial institutions, as that term was defined when the offenses occurred in 2006, and forfeiture under §982(a)(2)(A) requires that the illegal conduct "affect[] a financial institution" (see Docs. 195, 200).  The United States concedes that a forfeiture money judgment pursuant to §982(a)(2)(A) for loans obtained from these lenders would violate the *ex post facto* clause (see Doc. 202, pp. 4, 6).

Nonetheless, the United States asserts that these loan proceeds are subject to forfeiture pursuant to 28 U.S.C. 2461(c) and 18 U.S.C. 981(a)(1)(C)(Docs. 202, 219).  When read along with 21 U.S.C. 853, these statutes permit criminal forfeiture of the proceeds of the defendants' wire and mail fraud that did not affect a financial institution as defined in 2006. See United States v. Padron, 527 F.3d 1156, 1161-62 (11th Cir. 2008).

Section 2461(c) provides that, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil ... forfeiture of property is authorized .... [and] the defendant is convicted of the offense ... the court shall order the forfeiture of the property as part of the sentence in the criminal case."  Through cross-references to other statutes, 18 U.S.C. 981(a)(1)(C) permits the civil forfeiture of the proceeds from general mail and wire fraud.  Thus, §981(a)(1)(C) permits civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)." The term "specified unlawful activity" incorporates by reference the list of RICO predicate offenses in 18 USC 1961(1), which includes mail and wire fraud. See 18 U.S.C. 1956(c)(7)(A).  Therefore, since civil forfeiture of these proceeds is permitted, criminal forfeiture of the mail and wire fraud proceeds is also authorized by §2461(c).

The defendants argue that the United States may not change at this late stage of the proceedings the statutory basis for the forfeiture.  This contention is unavailing because the Eleventh Circuit, in United States v.

Wall, 285 Fed. Appx. 675, 684 (11th Cir. 2008), reh'g denied, 307 Fed. Appx. 438 (11th Cir. 2008), resolved an analogous circumstance in favor of the United States.

In Wall, the appellants were found guilty by a jury of, among other offenses, substantive mail and wire fraud. Id. at 676. One of the appellants claimed, similar to this case, that forfeiture was inappropriate under 18 U.S.C. 982 because his wire and mail fraud violations did not affect a financial institution. Id. at 684. The Government agreed, but argued that the forfeiture should stand because "the reference to 18 U.S.C. §982 in the indictment was a scrivener's error, and they were really seeking forfeiture under 18 U.S.C. §981 and 28 U.S.C. §2461." Id. The Eleventh Circuit accepted the Government's argument. Id. It reasoned that, "[s]ince the indictment clearly notified the Appellants that the Government sought to forfeit their fraud proceeds, the Appellants were not prejudiced by the scrivener's error, and absent prejudice, a scrivener's error in the indictment is not grounds for reversal." Id. Although the Wall case is an unpublished opinion, its reasoning is persuasive.

The same conclusion was reached in United States v. Silvious,

512 F.3d 364 (7th Cir. 2008). Silvious, who pled guilty to committing general mail fraud, argued at his sentencing that the indictment erroneously identified §982 as the basis for forfeiture. Id. at 367, 368. The Government agreed, but contended that forfeiture was nonetheless appropriate under §2461(c) and §981. Id. at 368. The Seventh Circuit affirmed forfeiture of the proceeds pursuant to §2461(c) and §981, reasoning that the erroneous citation in the indictment did not prevent the defendant from receiving adequate notice of the forfeiture as required by the Federal Rules of Criminal Procedure. Id. at 370. See also United States v. Edelkind, 467 F.3d 791, 800 (1st Cir. 2006), cert. denied, 549 U.S. 1326 (2007).

Similar to Wall and Silvious, the citation error in this indictment is harmless because the indictment, and the Forfeiture Bill of Particulars, notified the defendants that the United States would seek to forfeit their fraud proceeds (Doc. 202, pp. 4-5). Further, the defendants, both of whom have experienced counsel, were given (and took) the opportunity to file supplemental memoranda challenging the application of §2461 and §981 (see Docs. 216, 217). Therefore, the defendants were not

prejudiced by correction of this error.

The defendants, moreover, have not meaningfully challenged the application of Wall to this case. Vernon's counsel quibbled at the hearing regarding whether the United States's citation error is properly characterized as a "scrivener's error." Vernon also submitted a "Notice of Supplemental Authority," in which he argued that Wall was distinguishable because the Government in Wall identified the correct forfeiture statute prior to trial, whereas here the United States made the statutory correction in post-trial proceedings (Doc. 218, p. 2). Neither argument is persuasive, however, because the dispositive consideration in Wall (and Silvious) was that the defendants received notice in the indictment of the United States's intention to seek forfeiture. In sum, Wall and Silvious are powerful authority that the United States is not precluded in this circumstance from asserting 28 U.S.C. 2461(c) and 18 U.S.C. 981(a)(1)(C) as the statutory bases for the forfeiture of proceeds obtained fraudulently from the eight non-financial institutions.

Alternatively, the defendants contend that the amount of the forfeiture requested by the United States pursuant to §2461 and §981 is

excessive (Doc. 217). They argue, in this respect, that the court must consider §981's "set-off" provision, which states that, "[i]n cases involving fraud in the process of obtaining a loan ... the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim." 18 U.S.C. 981(a)(2)(C). Specifically, the defendants contend that the forfeiture money judgment should be reduced by $230,000, to account for the full repayment of the loan for 606 Lambright Street (Doc. 217, p. 3). Further, the defendants argue that, with regard to the remaining loans, it is unknown whether the original lenders, who sold the properties to successor lenders for unknown amounts, suffered financial losses (id., pp. 3-6). Thus, the defendants argue that to determine whether additional deductions are warranted under §981(a)(2)(C), a legal determination must be made as to the identity of the "victim" under the statute (i.e., the original or a successor lender), and evidence must be gathered regarding the amount the victims paid for their interests in the property, and the prices at which the properties were sold, in order to determine financial losses (id.).

In response, the United States agreed to reduce the requested

forfeiture judgment amount by $230,000 because the Lambright Street property was sold without financial loss (Doc. 219, pp. 1, 11). However, the United States disputes that any further reduction is appropriate, arguing (albeit inconsistently) that §981's set-off provision does not apply to criminal forfeitures (Doc. 219, p. 3, n.4).

A close review of the statutes shows that §981's set-off provision does not apply here because, pursuant to §2461(c), §981 merely authorizes criminal forfeiture, after which the forfeiture is to be effected in accordance with the procedures in 21 U.S.C. 853. Specifically, 28 U.S.C. 2461(c) provides:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a

violation of such Act.

Thus, Section 2461(c) is a "bridge" or "gap-filler" between civil and criminal forfeiture, permitting criminal forfeiture when civil forfeiture for that crime is authorized. United States v. Vampire Nation, 451 F.3d 189, 199 (3rd Cir. 2006), cert. denied, 549 U.S. 970 (2006). Here, §981(a)(1)(C) is the authority for the government to seek criminal forfeiture for general mail and wire fraud pursuant to §2461(c).

After criminal forfeiture is authorized, §2461(c) directs that the forfeiture proceed in accordance with the provisions of 21 U.S.C 853 (except subsection (d)). Thus, "[t]he only plausible reading of Section 2461(c) … is that it incorporates … all of Section 853's procedures relevant to post-conviction forfeiture, except subsection (d)." United States v. Razmilovic, 419 F.3d 134, 137 (2d Cir. 2005); see also United States v. Vampire Nation, supra, 451 F.3d at 201 ("In 28 U.S.C. §2461(c), Congress stated that criminal forfeitures are to be carried out pursuant to the procedures set forth in 21 U.S.C. §853").

Section 853(a)(1) defines property forfeitable to the United States to include "any property constituting, or derived from, any proceeds

the person obtained, directly or indirectly, as a result of such violation." This provision has been interpreted as forfeiture of the gross proceeds of the offense. United States v. McHan, 101 F.3d 1027, 1042 (4th Cir.1996), cert. denied, 520 U.S. 1281 (1997); United States v. Keeling, 235 F.3d 533, 537 (10th Cir. 2000), cert. denied, 533 U.S. 940 (2001). Further, §853 does not contain a set-off provision which permits a deduction for repayment of debt. To the contrary, §853(c) states that "[a]ll right, title and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section." (emphasis added). Cf. United States v. Browne, supra, 505 F.3d at 1281 (rejecting a set-off for funds returned to the victim because the United States's interest in the proceeds of her embezzlement related back to the time of the criminal act). Therefore, under §853, a "forfeiture judgment may be entered for the full amount of the criminal proceeds." United States v. Vampire Nation, supra, 451 F.3d at 201.

In sum, §981(a)(1)(C) authorizes the United States to seek criminal forfeiture under §2461(c) for general mail and wire fraud offenses. However, the provisions of §981 do not otherwise apply, as §2461(c) directs

that the procedures in §853 govern the criminal forfeiture.

After excluding the proceeds from the Lambright Street property, which the United States has decided not to pursue (see Doc. 219, p. 1), the other lenders that were not financial institutions funded fraudulent purchases of properties totaling $1,274,000 (see Doc. 187, p. 5, Doc. 217, pp. 2-3).[2] Accordingly, I recommend forfeiture pursuant to 28 U.S.C. 2461(c) and 18 U.S.C. 981(a)(1)(C) in the amount of $1,274,000. The total sum of the recommended money forfeiture judgment for each defendant is therefore $1,618,000, which comprises $344,000 under §982(a)(2)(A), and $1,274,000 pursuant to 28 U.S.C. 2461(c) and 18 U.S.C. 981(a)(1)(C).

C. Finally, Vernon argues that any money forfeiture judgment would violate the Excessive Fines Clause of the Eight Amendment (Doc. 195, pp. 2-3, 12-15). The United States correctly responds that "the money

---

2 It is unclear from the United States's submissions who funded the second mortgages on the Woodrow Avenue and Columbus Drive residences, which total $86,000 (see Doc. 187, p. 5). The indictment states that the primary mortgages for those residences, totaling $344,000, were funded by FDIC insured banks (Doc. 1, pp. 10-11). Accordingly, forfeiture of those loan proceeds is appropriate under §982(a)(2). However, since it is unclear whether the second mortgages for those properties were funded by the same or different lenders, it cannot be determined whether forfeiture of the proceeds from those second mortgages is authorized under §982(a)(2), or §2146(c) and §981(a)(1)(C). Since the United States has not shown that forfeiture is proper under §982, it is appropriate to treat the proceeds as recoverable under §2461(c) and §981(a)(1)(C). Notably, the defendants have not made any specific challenge to forfeiture of these two second mortgages.

judgment in this case cannot be considered grossly disproportionate to the harm cause[d] by the defendants' crimes, because it represents exactly the fruits of their conspiracy" (Doc. 202, p. 13). Accordingly, the Eighth Amendment contention is meritless.

The Eighth Amendment to the Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." A forfeiture violates the Excessive Fines Clause only if it is "grossly disproportional to the gravity of a defendant's offense." United States v. Bajakajian, 524 U.S. 321, 334 (1998)(finding that a $357,144 forfeiture was disproportionate to the offense of failing to report possession of currency in excess of $10,000).

Three factors guide the gross-disproportionality inquiry: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." United States v. Chaplin's, Inc., 646 F.3d 846, 851 (11th Cir. 2011). Additionally, a "strong presumption of constitutionality" applies to forfeitures that fall below the maximum statutory fine for the offense. Id. at

852.  Furthermore, "the interplay between the forfeiture order and the fine imposed by the district court" is relevant to the gross-disproportionality analysis.  Id. at 854.

Vernon unquestionably falls within the class of persons at whom the criminal statutes were principally directed.   Thus, the jury found Vernon guilty of participating in a scheme to induce ten lenders to fund fraudulent mortgage loans totaling $1.848 million dollars, and employing the mail and wire systems to facilitate the fraudulent conduct (Docs. 1, 171, 172).   This is unquestionably activity that the applicable criminal statutes are intended to punish.   Furthermore, these circumstances show that Vernon's reliance on Bajakajian is misplaced, as Bajakajian's misconduct was relatively minimal.   See United States v. Bajakajian, supra, 524 U.S. at 337-39.

Second, the maximum statutory prison sentences of 20 or 30 years, for each of the thirteen counts, reflects the seriousness of Vernon's offenses.   18 U.S.C. 1014, 1341, 1343, 1349.   See United States v. Browne, supra, 505 F.3d at 1282 ("That Congress authorized a maximum fine of $250,000 and 20 years' imprisonment ... [for each count] further

underscores that it viewed such violations as serious transgressions"). Moreover, a forfeiture judgment of $1.618 million dollars is substantially less than the maximum monetary fine of two million dollars for the convictions on the two §1014 counts plus the possible statutory fines for his convictions on the eleven other counts. These circumstances essentially defeat the argument that the recommended forfeiture money judgment is disproportionate to the gravity of Vernon's offenses. See United States v. Chaplin's, Inc., supra, 646 F.3d at 852 ("Congress, as a representative body, can distill the monetary value society places on harmful conduct; forfeitures falling below the maximum statutory fines for a given offense therefore receive a 'strong presumption' of constitutionality.").

The last factor-the harm caused by Vernon's criminal conduct-also weighs in favor of the requested money forfeiture judgment. Thus, Vernon's fraudulent conduct caused significant harm, as it has affected numerous victims and involved a substantial amount of money.

Vernon argues that a money forfeiture judgment against him would be excessive due to his purported minimal involvement in the offenses (Doc. 195, pp. 14-15). Notwithstanding Vernon's protestations of

minimal involvement, the jury found him guilty on all thirteen counts of the indictment. Furthermore, because this case involves a conspiracy, Vernon is held responsible for the criminal conduct of his co-conspirators; consequently, the harm and seriousness of the offenses are not viewed solely through Vernon's personal conduct. See, e.g., United States v. Browne, supra, 505 F.3d 1246, 1281-82 (forfeiture of $592,000 in criminal proceeds is not a constitutionally excessive fine even though the defendant only personally embezzled $116,000); United States v. Bolin, 264 F.3d 391, 418-19 (4th Cir. 2001), cert. denied, 534 U.S. 935 (2001)(rejecting the argument that a $1.2 million dollar forfeiture judgment was excessive under the Eighth Amendment because, despite the defendant's minor role and small personal benefit, he is liable for the criminal conduct of his co-conspirators); United States v. Hurley, 63 F.3d 1, 22 (1st Cir. 1995), cert. denied, 517 U.S. 1105 (1996)(holding a defendant liable for an amount of money obtained as a result of the illegal conduct of the conspiracy "is quite rational based on a proportionality analysis").

Taking all of these factors together, it is apparent that Vernon was found guilty of very serious misconduct, under which he could receive a

maximum sentence of many years in prison and much more than two million dollars in fines. Under these circumstances, a forfeiture money judgment against Vernon in the amount of $1.618 million dollars is clearly not grossly disproportional to the gravity of his criminal conduct.

IV.

For the reasons stated, I recommend that the United States's Motions for Forfeiture Money Judgment (Docs. 187, 188) be granted to the extent that each defendant be ordered to forfeit the amount of $344,000.00 pursuant to 18 U.S.C. 982(a)(2)(A), and $1,274,000.00, pursuant to 28 U.S.C. 2146(c) and 18 U.S.C. 981(a)(1)(C), for total forfeiture money judgments of $1,618,000.00.[3]

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED:  JUNE 4, 2012

NOTICE TO PARTIES

---

3 The United States seeks forfeiture money judgments against the defendants because they could not locate the specific property constituting, or derived from, the proceeds the defendants received from their illegal acts in this case (Doc. 188, p. 3).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.    28 U.S.C. 636(b)(1).